IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BOARD OF TRUSTEES OF THE** | § | |
| **PLUMBERS AND PIPEFITTERS** | § | |
| **NATIONAL PENSION FUND**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3386-L** |
| | § | |
| **PATRICIA FRALICK,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Opposed Motion to Enlarge Time, filed October 10, 2012 (Doc. 20); Plaintiff's Motion for Summary Judgment, filed October 19, 2012 (Doc. 25); Defendant's Motion to Dismiss for Lack of Standing, filed October 31, 2012 (Doc. 33); Defendant's Rule 56(d) Filing and Alternative 6(B) Filing (Doc. 36), filed November 5, 2012; and Motion to Amend Existing Scheduling Order, Extend Certain Pretrial Deadlines, and Reset Current Trial Date (Doc. 46), filed by Defendant on March 26, 2013.

After carefully considering the motions, briefing, pleadings, evidence, and applicable law, the court **grants** Plaintiff's Motion for Summary Judgment (Doc. 25) and **dismisses with prejudice** Defendant's counterclaim and request for Preretirement Surviving Spouse Pension benefits. Additionally, the court **denies** Defendant's Opposed Motion to Enlarge Time (Doc. 20); **denies** Defendant's Motion to Dismiss for Lack of Standing (Doc. 33); **denies** Defendant's Rule 56(d) Filing and Alternative 6(B) Filing (Doc. 36); and **denies** the Motion to Amend Existing Scheduling Order, Extend Certain Pretrial Deadlines, and Reset Current Trial Date (Doc. 46).

I. **Procedural and Factual Background**

Plaintiff Board of Trustees of the Plumbers and Pipefitters National Pension Fund (the "Fund") brought this action on December 7, 2011, seeking relief under the Federal Declaratory Judgment Act against Defendant Patricia Ann Fralick ("Patricia Fralick"). This is the second of two lawsuits involving the Fund, Patricia Fralick, and benefits sought by Patricia Fralick under an ERISA[1] pension benefit plan. The first lawsuit was brought by Patricia Fralick's husband Fred Fulton Fralick ("Fred Fralick") on April 24, 2009, against the Fund for unpaid early retirement benefits and cessation of the Fund's attempts to recoup early retirement benefits previously paid to him. *See Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2010 WL 2563429, at *2 (N.D. Tex. June 22, 2010), *aff'd*, 420 F. App'x 364 (5th Cir. 2011) ("*Fralick I*").

*Fralick I* addressed whether Fred Fralick was entitled to early retirement benefits under a Single Life Pension with 5-Years Certain Payment Plan ("Single Life Pension"). Benefits under this pension plan guaranteed payments for the lifetime of Fred Fralick as the participant. If Fred Fralick died before receiving 60 monthly payments, his beneficiary Patricia Fralick would receive the remaining payments until a total of 60 payments were made to the participant and beneficiary combined.

In *Fralick I*, the Fund maintained Fred Fralick was not entitled to early retirement benefits under a Single Life Pension because he engaged in disqualifying employment under the Plan and therefore was not retired as required to receive such benefits. *Id*. Fred Fralick, on the other hand, contended that he was entitled to early retirement pension benefits in the form of a Single Life

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Pension because, after retiring, he did not engage in disqualifying employment that would affect his retirement status under the National Pension Fund plan (the "Plan").

Fred Fralick filed a motion for judgment on the pleadings in *Fralick I*, which was converted to a summary judgment motion, and the Fund also moved for summary judgment. In a June 22, 2010 opinion, Chief Judge Sidney A. Fitzwater noted that resolution of the parties' motions in *Fralick I* required the court to "decide whether the plan trustees abused their discretion in concluding that the plaintiff beneficiary was precluded from receiving early retirement benefits because he was engaged in disqualifying employment under the plan." *Id.* at *1. The following uncontested facts, which are pertinent to this case, are set forth in the June 22, 2010 opinion in *Fralick I*:[2]

> Plaintiff-counterdefendant Fred Fralick ("Fralick") sues defendant-counterplaintiff Plumbers and Pipefitters National Pension Fund (the "Fund") under ERISA § 502, seeking retirement benefits and cessation of the Fund's collection efforts for money previously paid. The Fund counterclaims to recover sums paid to Fralick. The suit arises from a dispute over Fralick's entitlement to [early] retirement benefits under the terms of the Fund's Plan of Benefits (the "Plan").

> Fralick is currently 61 years old and has worked for most of his life in the plumbing industry. During most of that time, he was a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (the "Union") and its local 100. Fralick worked for various employers who, under the terms of the applicable collective bargaining agreement, made contributions on his behalf to the Fund. The Fund is a defined benefit multi-employer pension fund that accepts payments from employers (referred to as "contributing employers"), in exchange for a promise to later pay pension benefits to individual employees according to the terms of the Plan.

---

[2] In footnote 2 of the opinion, Chief Judge Fitzwater noted that "this memorandum opinion and order will recite primarily the facts that are uncontested. If a contested fact is relevant to the court's analysis . . . the court will view the evidence in the light most favorable to the nonmoving party. . . . . If a contested fact issue is relevant to the analysis of both motions, the court will note the disagreement." *Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2010 WL 2563429, at **1, n.2 (N.D. Tex. June 22, 2010), *aff'd*, 420 F. App'x 364 (5th Cir. 2011) (citations omitted).

The Plan contains several relevant provisions that relate to retirement and post-retirement employment by beneficiaries. Under the Plan, normal retirement age is generally age 65. Plan participants can take early retirement, but early retirement pension benefits are available only if a participant is retired. "To be considered 'Retired,' a Participant must have separated from service with any and all Contributing Employers and from any and all employment that would be considered to be Disqualifying Employment[.]" D.App. 26. In the context of this case, "disqualifying employment" includes, *inter alia*, (1) "Employment with any Contributing Employer," (2) "Employment with any employer in the same or related business as any Contributing Employer," or (3) "Employment or self-employment in any business which is under the jurisdiction of the Union." *Id.* at 27. Engaging in disqualifying employment merits a six-month suspension of benefits after the conflicting work ceases, with an additional six-month term possible if the beneficiary failed to notify the Fund of the disqualifying employment or wilfully misrepresented facts. Both six-month periods are waivable at the discretion of the Fund's Board of Trustees.

In 2005, before this litigation, Fralick worked for Brandt Engineering, a contributing employer engaged in mechanical engineering. Both parties agree that this work falls within the plumbing and pipefitting industry. Fralick, who was 57 years old at the time, contacted Robert Cooke ("Cooke"), an employee of the Union. Fralick asked Cooke about the option of taking early retirement. He inquired about whether he could begin receiving pension payments if he retired in 2005 from Brandt Engineering, even if he subsequently went to work for an electrical engineering company. Cooke informed Fralick that performing work as an electrical engineer would not endanger his entitlement to pension benefits. Because electrical engineering work is distinct from mechanical engineering work, Fralick's electrical engineering employment would not disqualify him from being "retired" from the plumbing and pipefitting business. Neither Fralick nor the Fund disputes this conclusion in principle.

Fralick concluded his employment with Brandt Engineering in December 2005. He was awarded early retirement benefits and received monthly payments for the majority of 2006. Beginning in January 2006, Fralick began working for Brandt Electric, a legally distinct sister company to Brandt Engineering. The two companies apparently share the same corporate hierarchy, advertise through the same website, and have their headquarters offices at the same Dallas location, although they are legally distinct and perform different services. The part of the company website that pertains to "Electrical Services" states that "Brandt Electric was organized in August 2001, with a goal to expand our services to our key customers[.]" D.App. 84. Brandt Electric's contact email address is "electricalinfo@brandteng.com." *Id.* Brandt Engineering is apparently the older of the two companies.

In November 2006 the Fund received notice from the business manager of a Union local that Fralick was employed by Brandt Engineering (not Brandt Electric). The Fund informed Fralick that this was "disqualifying employment," that he was not entitled to Plan benefits, and that the Fund was suspending payment of benefits. It requested that he return the money it had distributed in 2006. Fralick appealed the decision, arguing that he was employed by Brandt Electric   not Brandt Engineering   and that Brandt Electric did not engage in any business covered by the Union that could trigger the disqualifying employment sanctions. The Fund affirmed its initial decision.

*Id.* at *1-3.  In reviewing the Fund's decision to terminate Fred Fralick's pension benefits, the court

in *Fralick I* summarized the grounds advanced by the Fund in making that determination:

The Fund appears to have originally maintained that Fralick was an employee of Brandt Engineering, a contributing employer, and therefore ineligible for benefits. The Fund asserted that it initially became aware that Fralick was possibly disqualified from receiving Plan benefits when it received a letter from the business manager of a Union local that stated that Fralick "is currently employed by Brandt Engineering." D.App. 58. Apparently based largely, if not entirely, on this communication, the Fund notified Fralick by December 6, 2006 letter that it had "received notification that you are currently working at the [plumbing and pipefitting] trade with Brandt Engineering in Austin, TX." *Id.* at 59. Consequently, it suspended benefits effective January 1, 2007. It therefore appears to the court, and is not disputed by either party, that the Fund originally based its disqualification decision on the assumption that Fralick was an employee of Brandt Engineering (as opposed to Brandt Electric).

The second theory on which the Fund relied was that Brandt Electric was an employer in the same or related business as any contributing employer, i.e., that Brandt Electric engaged in work of a type that was performed by contributing employers. Fralick notified the Fund that he was employed by Brandt Electric in its Computer Aided Design ("CAD") department and in document control. The Fund responded that this

work would be a violation of [the Plan], in that such work is for any employer in a related business as a Contributing Employer since the electrical contracting company would be having these individuals perform mechanical CAD work, which is work done by Contributing Employers to [the Fund], and thus work that is done by an employer in the same or related business.

*Id.* at 61.

Fralick appealed again, arguing that "Brandt Electric has never requested that I do any mechanical drawings, since they do no mechanical work, or any other work, that is related to the Plumbing and Pipefitting industry." *Id*. at 65. In addition, Fralick submitted a letter from Brandt Electric's president that stated: "Brandt Electric is an Electrical Contractor. We are a completely separate company from Brandt Engineering. We do no Plumbing, Pipefitting, or Mechanical work. We have our own detailing department and they do only electrical drawings." *Id.* at 69.

In response to these communications, the Fund sent a third letter to Fralick rejecting his arguments. Here, the basis for the Fund's decision to deny benefits appears to have shifted again. The Fund denied his appeal on the basis that "Brandt Electric is a sister company to Brandt Engineering. Brandt Engineering is a [Contributing Employer]. You are employed by Brandt Electric, which is Disqualifying Employment since such work is for an employer in a related business as a Contributing Employer." *Id*. at 70. The Fund relied on this same reasoning in subsequent letters that it sent to Fralick after he retained counsel and submitted additional evidence about his employment with Brandt Electric.

In its submissions in this case, the Fund has raised a new argument to justify its decision, and it draws the supporting evidence primarily from Fralick's deposition testimony. Essentially, the Fund asserts that, although Fralick may have been employed by Brandt Electric, he actually continued to work for Brandt Mechanical. The Fund characterizes Fralick's arrangement with Brandt Electric as "sham employment," and points to deposition testimony showing that Fralick was supervised by Brandt Engineering employees, was assigned work by Brandt Engineering on job sites where Brandt Electric was not involved, performed work that was covered by the Union (and which did not benefit Brandt Electric), and was unfamiliar with the employees and management of Brandt Electric. The Fund maintains that, although Fralick may have been on Brandt Electric's payroll, his testimony shows that he actually performed work for, and under the supervision of, Brandt Engineering. The Fund posits that, because the Plan's understanding of disqualifying employment is broad enough to encompass this situation and is not limited simply to being on the payroll of a contributing employer, Fralick's services for Brandt Engineering demonstrate that he was not "retired" under the Plan.

*Id*. at *3-5.

In response to the Fund's summary judgment motion, Fred Fralick moved to strike the Fund's evidence of his deposition testimony, which the Fund relied on to show that Fred Fralick was not retired because he had engaged in disqualifying employment. The court agreed with Fred Fralick

that his deposition testimony could not be considered by the court because it was not part of the administrative record. *Id*. at *5. Based on the record before it, the court adopted Fred Fralick's "central argument" "that his work as an electrical contractor was not disqualifying employment" under section 9.07(a)(i) of the Plan. *Id.* at *21. The court therefore denied the Fund's summary judgment motion, granted Fred Fralick's summary judgment motion, and determined that Fred Fralick was entitled to judgment on the Fund's counterclaim to recover the amounts paid to him. Specifically, the court awarded Fred Fralick "a lump-sum payment of $89,182.00 ($2,623 per month x 34 months, from January 2007 to October 2009), prejudgment and postjudgment interest, and cessation of the Fund's attempts to collect the $31,476.00 distributed to him in 2006" under a Single Life Pension. *Id.* at *22. The court also allowed Fred Fralick to apply for an award of attorney's fees pursuant to Rule 54(d)(2).[3] On July 6, 2010, Fred Fralick moved for attorney's fees and was awarded a total of $53,000 for attorney's fees and $523.75 for paralegal fees and costs. Docs. 66, 88 (*Fralick I*).

On July 13, 2010, the Fund appealed the judgment in *Fralick I*. The Fund also moved to stay execution of the judgment, which was granted. On November 12, 2010, before the appeal was decided, Fred Fralick died. On November 16, 2010, after determining that Fred Fralick's fee application may be governed by Federal Rule of Civil Procedure 25(a), Chief Judge Fitzwater deferred deciding the application and directed the parties to file a joint status report if a motion for substitution under Rule 25(a) was not filed within 90 days. On December 13, 2010, Fred Fralick's

---

[3] On June 28, 2010, the court in *Fralick I* entered a revised memorandum opinion and order that contains nonsubstantive editorial revisions at the request of counsel but noted that the revisions do not affect the final judgment entered on June 10, 2010.

widow, Patricia Fralick, filed an unopposed motion to be substituted as the plaintiff in *Fralick I* pursuant to Federal Rule of Civil Procedure 25(a), which was granted.  Docs. 76-78.

On November 29, 2010, two weeks after Fred Fralick's death, the Fund forwarded a pension benefits application to Patricia Fralick to notify her that she may be eligible for Preretirement Surviving Spouse Pension ("Surviving Spouse Pension") benefits under the Plan.  Pl.'s App. 325-26. According to the Fund, if the Fifth Circuit agreed with the Fund that Fred Fralick was not retired when he originally applied for Single Life Pension benefits in 2005, his original election of a Single Life Pension would be "ineffective" and, as a result, Patricia Fralick might be eligible for Surviving Spouse Pension benefits.  *Id.*  On the other hand, the Fund opined that if the Fifth Circuit agreed with the district court that the Fund's determination that Fred Fralick was not retired when he applied for Single Life Pension benefits in 2005 because he was engaged in disqualifying employment, Patricia Fralick would be entitled only to the Single Life Pension benefits elected.

The Fund estimated that Patricia Fralick's total lump sum payout under a Single Life Pension was $123,281, whereas a payout under a Surviving Spouse Pension would be approximately $436,886.  The Fund advised Patricia Fralick that if she submitted an application for  Surviving Spouse Pension benefits, it would delay processing her application until a final decision was reached in the pending litigation, since outcome of the litigation would affect which benefit Fralick was entitled to under the Plan.  *Id.* at 326.  Regardless of the outcome, the Fund expressed the opinion that because Patricia and Fred Fralick chose a Single Life Pension and began receiving payments under that pension on January 1, 2006, they waived their right to a survivor benefit.  *Id.* at 325.

In response to the Fund's November 29, 2010 letter, Patricia Fralick submitted documents necessary to obtain additional benefits under a Surviving Spouse Pension.  *See* Pl.'s App 333-38.

**Memorandum Opinion and Order – Page 8**

On February 3, 2011, the Fund wrote to Patricia Fralick again and noted that she had not completed and submitted the application sent to her. *Id.* The Fund also reiterated that, if she submitted an application for Surviving Spouse Pension benefits, it would be unable to process the application until a final decision was reached in the pending litigation. *Id.*

On March 28, 2011, the judgment of the district court was affirmed for essentially the same reasons given by the district court. *Fralick*, 420 F. App'x 364 (5th Cir. Mar. 28, 2011) (unpublished). On appeal, Patricia Fralick was awarded $36,936.88 in attorney's fees. Doc. 84 (*Fralick I*). Rather than pursue a further appeal, the Fund paid a total of $90,345.74 to satisfy the $89,182 in monthly Single Life Pension benefits ordered by Chief Judge Fitzwater, which included a small about of interest. The Fund also paid Patricia Fralick $90,713.73 for attorney's fees and costs awarded to her as the prevailing party in *Fralick I.* On June 26, 2011, Patricia Fralick filed a Satisfaction of Judgment in *Fralick I*, acknowledging the Fund's full and complete satisfaction of the judgment. Doc. 86 (*Fralick I*); *see also* Pl.'s App. 373 (same). The Fund attempted to pay Patricia Fralick for the remaining amount due under the Single Life Pension but she refused to accept payment and voided the checks sent to her. Pl.'s App. 368-70, 376, 379.

In a letter dated July 7, 2011, Patricia Fralick wrote to the Fund claiming Surviving Spouse Pension benefits under section 6.03 of the Plan. *Id.* at 374-75. Based on Fred Fralick's deposition testimony in *Fralick I*, Patricia Fralick took the position that she was entitled to Surviving Spouse Pension benefits because her husband had engaged in disqualifying work under the Plan and was thus not retired. Citing Chief Judge Fitzwater's decision in *Fralick I*, the Fund denied Patricia Fralick's claim for Surviving Spouse Pension benefits on July 29, 2011:

**Memorandum Opinion and Order – Page 9**

>Plan section 4.19 provides that a person shall be entitled to only one type of pension benefit under the rules of the Plan. As a result of [Chief] Judge Fitzwater's decision in the lawsuit (09-0752), it has now been established that Mr. Fralick was entitled to benefits for which he applied and in the form requested. Accordingly, a Preretirement Surviving Spouse Pension is not payable under Section 6.03 of the Plan because Mr. Fralick did not die before his effective Date of Benefits as defined by Section 9.05 of the Plan.

Pl.'s App. 377; *see also id.* at 94. The Fund further stated: "You agreed to payment in this form [under a Single Life Pension] by signing a consent form on December 2, 2005." *Id.* at 376; *see also* Pl.'s App. 174-78.

Patricia Fralick appealed the Fund's denial of Surviving Spouse Pension benefits, which was affirmed on December 5, 2011. Between December 23, 2011, and May 31, 2012, Patricia Fralick sought reconsideration of the benefits determination, which was denied. In her appeal and requests for reconsideration, Patricia Fralick continued to maintain that Fred Fralick's deposition testimony in *Fralick I* "clearly demonstrates that he was engaged in disqualifying employment." *Id.* at 427. Patricia Fralick contended that while such evidence was not included in the administrative record in *Fralick I* and could not be considered by Chief Judge Fitzwater, it was included in the current administrative record applicable to her claim for survivor benefits and therefore should be considered in deciding her claim. In furtherance of her position that her husband was engaged in disqualifying employment, Patricia Fralick also came forward, on May 22, 2102, with new information, including time sheets, regarding Fred Fralick's employment history that the Fralicks were aware of in 2006 but did not disclose in the prior litigation. *Id.* at 433, 435, 438, 458-59.

After denying Patricia Fralick's claim, the Fund brought this declaratory judgment action against Patricia Fralick on December 7, 2011, seeking an order: (1) prohibiting Patricia Fralick from asserting that Fred Fralick was not working in disqualifying employment; (2) concluding that the

Fund did not abuse its discretion in determining that Patricia Fralick is not entitled to Surviving Spouse Pension benefits; (3) determining that the Patricia Fralick is entitled only to additional payment from the Fund in the amount of $36,722, representing the remaining 14 months payable under a Single Life Pension awarded to Fred Fralick, and that such payment will satisfy the Fund's obligations toward Fred Fralick and Patricia Fralick. The Fund also seeks attorney's fees and costs.

In her Amended Answer, Patricia Fralick contends that the Fund is estopped, based on its position in *Fralick I*, from asserting that Fred Fralick was not engaged in disqualifying employment. Patricia Fralick also asserted a counterclaim for Surviving Spouse Pension benefits under ERISA. In support of her counterclaim, Patricia Fralick contends that Fred Fralick was not retired as that term is defined under the Plan because the deposition of Fred Fralick in *Fralick I* demonstrates that he was working in disqualifying employment. Def.'s Answer and Countercl., ¶¶ 69, 79-80. In addition to Surviving Spouse Pension benefits, Patricia Fralick seeks immediate payment of the remaining $36,722 in benefits under a Single Life Pension, but she indicates that any Surviving Spouse Pension benefits awarded would be reduced by this amount. Patricia Fralick also seeks attorneys' fees, costs, and prejudgment and postjudgment interest.

On October 19, 2012, the Fund moved for summary judgment on its declaratory judgment action and Patricia Fralick's counterclaim for Surviving Spouse Pension benefits, contending that it did not abuse its discretion in denying Patricia Fralick's claim for Surviving Spouse Pension benefits because its decision was legally correct. In its Complaint and summary judgment motion, the Fund asserts that only one pension is payable under the Plan and Patricia Fralick knowingly elected to receive benefits under a Single Life Pension, waived her right to receive pension benefits for her lifetime, and did not revoke or change her election before Fred Fralick died or before Single

Life Pension benefits were paid. The Fund further contends that Patricia Fralick is bound by the Fralicks' prior pension election, and she should not be permitted to avoid that prior election by relitigating and taking a position in this case that is contrary to the one she and her husband took and prevailed on in *Fralick I* and on appeal. Specifically, the Fund contends that Patricia Fralick is precluded, based on issue preclusion, res judicata, and judicial estoppel theories, from arguing that she is entitled to Surviving Spouse Pension benefits because Fred Fralick was not retired as a result of his engaging in disqualifying employment after leaving Brandt Engineering in December 2005. The Fund therefore contends Patricia Fralick is entitled only to the benefits remaining to be paid under a Single Life Pension, consistent with the Fralick's election and the court's determination in *Fralick I.*

Patricia Fralick did not file a response to the Fund's summary judgment motion. On October 10, 2012, she instead sought a two-month extension of the dispositive motion deadline. Patricia Fralick did not specifically request additional time for discovery but indicated in her motion that any extension of the dispositive motion deadline would necessitate an extension of the October 5, 2012 discovery and other deadlines. The Fund opposed the motion and requested extension.

After the October 19, 2012 dispositive motion deadline passed, Patricia Fralick filed a motion to dismiss the Fund's declaratory judgment action for lack of standing on October 31, 2012. After her November 9, 2012 summary judgment response deadline expired, Patricia Fralick filed a motion for extension of time pursuant to Rule 59(d). In light of her prior motion for extension and motion to dismiss, Patricia Fralick requested the court to delay ruling on the Fund's summary judgment motion and decide her motion to dismiss first because she believed that her motion dismiss, if granted, would moot the Fund's summary judgment motion. In her Rule 59(d) motion, she also

appears again to request that the court extend the dispositive motion deadline, as well as her expired summary judgment response deadline.  The Fund opposed the motion and requested extension.

On March 26, 2013, Patricia Fralick moved to amend the Amended Scheduling Order to extend the pretrial deadlines and the trial of this case until after resolution of any dispositive motions, reasoning that good cause existed for the requested extension because she had not filed a summary judgment motion or response to the Fund's summary judgment motion, and she believed that the case could be decided on summary judgment without need for any further discovery.  The Fund opposed the requested extension.  For the reasons herein discussed, the court concludes that Patricia Fralick's motion to dismiss and requests for extensions should be denied and the Fund's summary judgment motion granted.

## II.     Defendant's Motion to Dismiss for Lack of Standing

Patricia Fralick contends that the Fund does not have standing to bring an ERISA action, and that its declaratory judgment action is merely procedural in nature and circumvents her opportunity for a full review of her claim for additional benefits at the administrative level.  Patricia Fralick therefore contends that the court has subject matter jurisdiction over her counterclaim for benefits under ERISA but not the Fund's declaratory judgment action.

The Fund counters that the court has subject matter jurisdiction over its declaratory judgment action because federal courts have "regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."  Pl.'s Resp. 6-7 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983)). Based on the reasoning in *Franchise Tax Board*, the Fund contends that federal courts have held that the Declaratory Judgment Act

provides federal question jurisdiction in cases such as this when a declaratory judgment is sought

by an ERISA fund because a fund beneficiary, such as Patricia Fralick, could bring a coercive action

against the fund under section 1132(a) of ERISA for plan benefits.

The Fund also contends that Patricia Fralick's motion to dismiss is untimely because it was

filed on October 31, 2012, after the October 19, 2012 dispositive motion deadline set forth in the

court's June 21, 2012 Scheduling Order (Doc. 15). Patricia Fralick counters that her motion to

dismiss for lack of standing is timely because the issue of subject matter jurisdiction can be raised

at any time.

The court first addresses the parties' contentions regarding the timeliness of Patricia Fralick's

motion to dismiss based on lack of standing. Issues regarding Article III standing or constitutional

standing are properly addressed under Rule 12(b)(1), whereas prudential or statutory standing issues

are addressed under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795

n.2 (5th Cir. 2011). Accordingly, Patricia Fralick's motion to dismiss for lack of standing under

ERISA does not implicate the court's subject matter jurisdiction and should have been filed pursuant

to Rule 12(b)(6), or in any event no later than the October 19, 2012 dispositive motion deadline. The

court therefore agrees with the Fund that Patricia Fralick's motion to dismiss is untimely. Even

though Patricia Fralick's standing argument implicates statutory standing, rather than Article III

standing, the court has an independent obligation to first determine that subject matter jurisdiction

exists. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

Federal courts are courts of limited jurisdiction and must have statutory or constitutional

power to adjudicate a claim. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d

1006, 1010 (5th Cir. 1998). A federal court has subject matter jurisdiction over cases arising under

the Constitution, laws, or treaties of the United States, which is commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331. This provision for federal question jurisdiction is generally invoked by a plaintiff pleading a cause of action created by federal law. This, however, is not the only manner in which federal question jurisdiction may arise.

Here, the Fund is not suing under ERISA; rather, its declaratory judgment action is premised on the coercive ERISA counterclaim that the Fund anticipated Patricia Fralick would file after the Fund denied her claim for Surviving Pension Benefits. Thus, it is irrelevant whether the Fund has standing to sue under ERISA. "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 801 (5th Cir. 2008) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). The "threatened action" against the Fund arises under ERISA and thus states a federal question. The court therefore concludes that it has subject matter jurisdiction over the Fund's declaratory judgment action. *See id.*

## III.    Plaintiff's Motion for Summary Judgment

### A.    Summary Judgment Standard - No Response

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).   "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Id.*  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136

F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Patricia Fralick did not file a response to the Fund's summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id*. Accordingly, the court accepts the Fund's facts and evidence as undisputed. Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Patricia Fralick's pleadings are not verified, and, therefore, she has presented no summary judgment evidence.

## B.     Judicial Estoppel

The Fund contends that Patricia Fralick should be judicially estopped in this case from taking a position inconsistent to the one taken by the Fralicks in *Fralick I*. The central issue of contention in *Fralick I* was whether Fred Fralick had engaged in disqualifying employment that affected his

retirement status and entitlement to Single Life Pension benefits.  In *Fralick I*, Fred Fralick, and

Patricia Fralick as the substituted plaintiff, took the position that Fred Fralick was retired when he

applied for pension benefits in 2005 and he did not thereafter engage in disqualifying employment

that would have affected his retirement status.  The Fralicks convinced Chief Judge Fitzwater to

adopt their position in *Fralick I*.  Now, in this case, in an effort to obtain substantially more benefits

under a different pension plan, Patricia Fralick takes the contrary position that Fred Fralick was not

retired because his deposition testimony shows that he was engaged in disqualifying employment.

The purpose of judicial estoppel is "to protect the integrity of the judicial process." *New

Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  "Judicial estoppel is a common law doctrine that

prevents a party from assuming inconsistent positions in litigation." *In re Superior Crewboats*, Inc.,

374 F.3d 330, 334 (5th Cir. 2004).  Judicial estoppel is a matter of federal procedure to which federal

law applies.  *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003).  Judicial estoppel

is an equitable doctrine, and the decision whether to invoke it is within the court's discretion.  *Id.*

at 396 (citation omitted).  Judicial estoppel prevents a party from asserting a position in a legal

proceeding that is contrary to a position previously taken in the same or some earlier proceeding.

The purpose of the doctrine is to prevent litigants "from playing fast and loose with the courts."  *Id*.

(internal quotation marks omitted).  Judicial estoppel applies if: (1) "the position of the party to be

estopped is clearly inconsistent with its previous one"; and (2) the party convinced the court to

accept the previous inconsistent position.  *Id*. (internal quotation marks and citations omitted). A

third factor considered by courts in determining whether to apply the doctrine is "whether the party

seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair

detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751; *Hall*, 327 F.3d at 399.

The inconsistent position taken by Patricia Fralick is precisely the type of "fast and loose" playing that the doctrine of judicial estoppel is intended to prevent.  In an effort to obtain significantly more benefits under a Surviving Spouse Pension, Patricia Fralick has done an about-face and taken a position in this case that is entirely inconsistent with the one taken in *Fralick I* in an attempt to avoid the Fralicks' election to receive benefits under a Single Life Pension.  Allowing Patricia Fralick to now take the inconsistent position that her husband engaged in disqualifying employment under the Plan undermines the integrity of the judicial process and imposes an unfair detriment on the Fund by having it incur costs in relitigating an issue already decided and affirmed in *Fralick I*, and subjects it to paying different and significantly higher pension benefits than those ordered by the court in *Fralick I*.  The court therefore determines judicial estoppel applies to this case, and Patricia Fralick is precluded from arguing in this case that her husband was not retired because he had engaged in disqualifying employment under the Plan.

The court's determination in this regard is not affected by Patricia Fralick's contention that the administrative records in this and the prior case are different because the Fralicks made the strategic decision in *Fralick I* to argue that Fred Fralick was entitled to Single Life Pension benefits, as he had not engaged in disqualifying employment that would affect his retirement status, despite the existence of evidence indicating the contrary.  Whether the court was able to consider such evidence in *Fralick I* is irrelevant because, under the doctrine of judicial estoppel, the determinative factor is whether a party advocated an inconsistent position in a prior litigation that was accepted by

the court.  Thus, a party's reasons for advocating a certain position or the court's reasons for accepting it quite beside the point.

Here, even after her husband's death, Patricia Fralick, in *Fralick I*, continued to maintain on appeal that her husband had not engaged in disqualifying employment that would have affected his retirement status and entitlement to Single Life Pension benefits under the Plan; however, now, in an effort to obtain significantly more benefits, she reverses direction and contends that her husband did engage in disqualifying employment.  Patricia Fralick opted to ride one horse to the race in *Fralick I*, and she will not be permitted to switch horses and ride a different one to this race.  Chief Judge Fitzwater accepted and relied on the position taken by Patricia Fralick, and his determination was affirmed by the Fifth Circuit and is apposite to the disposition of this case.

### C.    Interpretation of the Plan

The Fund's denial of Patricia Fralick's survivor benefits claim is subject to the same abuse of discretion standard of review as was applied by Chief Judge Fitzwater in *Fralick I*:

> As the court explains below, it reviews the Fund's denial of Fralick's benefits claim under an abuse of discretion standard. Subject to limited exceptions, that review is conducted on the administrative record. *See Griffin v. Raytheon Co. Long Term Disability Plan No. 558*, 2005 WL 4891214, at *2 (N.D. Tex. Aug. 31, 2005) (Fitzwater, J.) ("With limited exceptions, this court's review of [the Plan's] decision in this ERISA case is restricted to consideration of the administrative record." (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc))).
> . . .
> Both parties agree that the Plan is subject to ERISA. "A plan participant who is denied benefits under an ERISA plan can sue to recover them." *Leake v. Kroger Texas, L.P.*, 2006 WL 2842024, *4 (N.D. Tex. Sept. 6, 2006) (Fitzwater, J.) (citing 29 U.S.C. § 1132(a)(1)(B)). This court has jurisdiction to review determinations made by an ERISA employee benefit plan. *Vega*, 188 F.3d at 295. In reviewing a decision by an ERISA plan administrator   here, the trustees of the Fund   factual determinations are always given deference, and are reviewed only for abuse of discretion. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). "[F]or factual determinations under ERISA plans, the abuse of discretion

standard of review is the appropriate standard; that is, federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment." *So. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993) (internal quotation marks omitted).

An administrator's interpretation of the terms of the plan, as opposed to a determination of the underlying facts, however, can be reviewed differently depending on the level of discretion given to the administrator by the plan. *See Vercher*, 379 F.3d at 226. "[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The parties do not dispute that the trustees have discretionary authority over the Plan. Thus "[i]n this case, because the Plan undisputedly gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions, we reverse the Plan Administrator's denial of benefits to [Fralick] only if it abused its discretion." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).

In cases where discretion is given to ERISA plan administrators, a district court employs a two-step process to evaluate the interpretation of the terms of the plan. "First, it determines whether the administrator gave the Plan a legally correct interpretation. Second, it decides whether the incorrect decision constitutes an abuse of discretion." *Krusos v. Atl. Richfield Co.*, 2003 WL 21383656, at *5 (N.D. Tex. June 11, 2003) (Fitzwater, J.). Courts consider three factors in answering the first inquiry (i.e., whether the Fund's interpretation of the Plan was legally correct): "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Wildbur*, 974 F.2d at 638. If "the fiduciary's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 270 (5th Cir. 2004). "If the determination was legally correct, there is no abuse of discretion; if it was incorrect, then [the court] must review whether that interpretation was an abuse of discretion." *Holland*, 576 F.3d at 246 n.2. It is not automatically an abuse of discretion for a plan administrator to improperly interpret the terms of the plan. *Allen v. Travelers Ins. Co.*, 29 F.3d 624, *2 (5th Cir. 1994) (unpublished opinion). But "[i]f the administrator's legal interpretation of the plan was correct, the inquiry ends, because a legally correct interpretation of a plan cannot constitute an abuse of discretion." *Krusos*, 2003 WL 21383656, at *5.

*Fralick I*, at *3, 9-10 (footnote omitted).

**Memorandum Opinion and Order – Page 21**

As was the case in *Fralick I*, "because the Plan undisputedly gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions, [this court will] reverse the Plan Administrator's denial of benefits to [Fred Fralick] only if it abused its discretion." *Id.* (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)). In making this determination, the court gives deference to the Fund's factual determinations and applies the two-step process described by Chief Judge Fitzwater in *Fralick I* to evaluate the Fund's interpretation of the Plan and its denial of Patricia Fralick's claim for Survivor Spouse Pension benefits under the Plan.

Based on the court's determination in *Fralick I*, the Fund concluded that Fred Fralick had not engaged in disqualifying employment under section 9.07(a)(i) of the Plan and was entitled to Single Life Pension benefits.  Pl.'s App. 409, 412.  In denying Patricia Fralick's appeal, the Fund noted that it had already paid out benefits based on, and in reliance on, the judgment in *Fralick I*, after Patricia Fralick pursued the litigation and sought to affirm the district court's decision that benefits were payable under a Single Life Pension.  *Id.*  The Fund further determined, based on Plan sections 4.19, 6.01, and 6.03, that Patricia Fralick was not entitled to a Surviving Spouse Pension under section 6.03[4] of the Plan because: (1) the Plan limits a person to only one type of pension benefit,[5] and the Fralicks elected to receive benefits under a Single Life Pension; (2) Surviving Spouse Pension

---

[4] In denying Patricia Fralick's appeal, the Fund states on the first page of its December 5, 2011 letter that it is writing with regard to Patricia Fralick's claim for Surviving Spouse Benefits under 6.02 of the Plan; however, this appears to be a typographical error since the remainder of this letter and other correspondence indicates that Patricia Fralick's claim for Surviving Spouse Benefits and the Fund's denial of her claim was made under section 6.03 of the Plan.  *Compare* Pl.'s App. 408 (referring to section 6.02 claim) and Pl.'s App. 411 and 377 (concluding that benefits were not payable under section 6.03).

[5] Pl.'s App. 94 (section 4.19).

**Memorandum Opinion and Order – Page 22**

benefits are payable under section 6.03(a) only if the Participant dies before his Effective Date of Benefits,[6] and Fred Fralick did not die before his January 1, 2006 Effective Date; (3) Surviving Spouse Pension benefits are payable under section 6.01(b) only if the Participant dies before his pension payments have started,[7] and Fred Fralick did not die before pension payments commenced in January 2006; and (4) Surviving Spouse Pension benefits are payable under section 6.01(a) as a 50% Husband and Wife Pension, unless the Participant and Spouse make another election in accordance with section 6.02(e),[8] and the Fralicks made another election when they opted to receive benefits under a Single Life Pension and rejected the option of receiving 50% Husband and Wife Pension benefits. *Id.* 408, 411-12.

In support of its summary judgment motion, the Fund submitted a copy of the Plan and evidence that shows information was provided to the Fralicks before they made their election in December 2005, explaining that under Article 6 of the Plan, all pensions paid to married participants are paid in the form of a "50% Husband and Wife Pension, unless this form is rejected by both the Participant and the Participant's spouse." *Id.* at 167. Under a 50% Husband and Wife Pension, the Fralicks would have received $2,329 monthly for Fred Fralick's lifetime and Patricia Fralick would have continued to receive $1,650 for her lifetime after Fred Fralick died. *Id.*; *see also id.* at 170. The Fund presented evidence that the Fralicks were provided information regarding benefits payable under a 50% Husband and Wife Pension and other pension plans. The information provided

---

[6] Pl.'s App. 101, 106 (section 6.03(a)).

[7] Pl.'s App. 99 (section 6.01(b)).

[8] Pl.'s App. 99 (section 6.01(a)).

**Memorandum Opinion and Order – Page 23**

explained, "You have the right to revoke any election made up until the time payment starts." *Id.* at 170.

The Fund also presented evidence establishing that, in December 2005, the Fralicks "elect[ed]" to receive retirement benefits under the Plan in the form of a Single Life Pension and designated January 1, 2006, as the Effective Date of Benefits. *Id.* at 174, 176 (pension election), 138, 167, 177 (Effective Date of Benefits). In electing a Single Life Pension under Section 6.07 of the Plan, the Fralicks acknowledged, "We understand that the form of benefit elected may not be subsequently changed unless the participant and the spouse revoke [their] rejection of the 50% Husband and Wife Pension at any time prior to payment of benefits." *Id.* at 174. The Fralicks also acknowledged that:

> 1[.] We understand that this benefit is being paid in the normal form of benefit for single Pensioners and no other options will be payable[.]
>
> 2[.] We understand that if the Pensioner should die prior to receiving 60 monthly benefits, that the full monthly benefit the Pensioner was receiving at the time of his death will be paid to his designated beneficiary [Patricia Fralick] until a combined total of 60 monthly payments have been made as provided in section 7.02 of the Plan.
>
> 3[.] We understand that this election is automatically rescinded if we revoke the rejection of the 50% Husband and Wife Pension in accordance with the provisions in Article 6 of the Plan.
>
> 4. We understand that we have the right to at least 30 days to consider the benefit payment option information provided with this letter and to consider whether to consent to payment[.] We understand that once made, we may revoke this election up until the time payment has actually been made[.]
>
> We have read and understand the terms and conditions governing the Single Life Pension with 5-Years Certain Payments as set forth herein[.]
>
> We consent to receive the Pension in the form of the Single Life Pension with 5-Years Certain payments of $\underline{\$2,623}$ per month.

*Id.* at 176.

In conjunction with their Single Life Pension election, the Fralicks "reject[ed]" the 50% Husband and Wife Pension that would have provided Patricia Fralick with survivor benefits for the remainder of her life upon Fred Fralick's death. *Id.* The Fund's evidence also demonstrates that Patricia Fralick expressly "consented" to the rejection of the 50% Husband and Wife Pension. *Id.* at 175. Accordingly, the Fund's evidence shows that the Fralicks elected benefits under a Single Life Pension and rejected the 50% Husband and Wife Pension. Furthermore, it is undisputed that Fred Fralick started receiving benefits under a Single Life Pension in January 2006[9] before he died in November 2010,[10] and there is no evidence that the Fralicks revoked their election prior to receiving benefits under a Single Life Pension.

Based on the aforementioned evidence and the court's determination that Patricia Fralick is judicially estopped from arguing that the Fralicks' prior election is ineffective on the grounds that her husband was retired as a result of engaging in disqualifying employment, the court concludes that the Fund's interpretation of the Plan, consistent with *Fralick I*, was legally correct, and it did not abuse its discretion in denying Patricia Fralick's claim for Surviving Spouse Pension benefits under section 6.03 of the Plan.[11] *Holland*, 576 F.3d at 246 n.2. Moreover, as previously noted, the Fund

---

[9] *Fralick*, 2010 WL 2563429, at *2.

[10] Pl.'s App. 334.

[11] The Fund also contends, and the court agrees, that Patricia Fralick's estoppel defense is without merit and does not affect the court's determination that the Fund did not abuse its discretion in denying Patricia Fralick's claim for additional or different benefits under a Surviving Spouse Pension. Specifically, Patricia Fralick's estoppel defense is based on her contention that the Fund should not be permitted to take a position in this case that is contrary to the one taken in the prior litigation, that is, that Fred Fralick was not retired because he engaged in disqualifying employment. Patricia Fralick, however, overlooks that she, not the Fund, prevailed in the prior litigation. Thus, she, not the Fund, is estopped from asserting a position in this case that is inconsistent with that previously taken. The court further agrees with the Fund that its November 29, 2010 and February 3, 2011 letters, relied on by Patricia Fralick, notifying Patricia

presented evidence that it has satisfied the judgment in *Fralick I.* Doc. 86 (*Fralick I*); *see also* Pl.'s

App. 373 (same). Accordingly, no genuine dispute of material fact exists regarding Patricia Fralick's

claim for Surviving Spouse Pension benefits. The Fund is therefore entitled to judgment as a matter

of law on its Patricia Fralick's ERISA claim and its declaratory judgment action.

## IV.   Patricia Fralick's Requests for Extensions

The court notes that, despite the order in which Patricia Fralick's motions for extension

appear in this opinion, these motions were considered and decided before the court considered the

motion to dismiss and motion for summary judgment. Moreover, the court would reach the same

result regardless of the order in which it decided the motions in this case.

### A.   October 10, 2012 Opposed Motion to Enlarge Time

On October 10, 2012, Patricia Fralick requested the court to extend the October 19, 2012

dispositive motion deadline to December 19, 2012, in light of a pending discovery dispute. Patricia

Fralick states in her motion:

> 1.   Defendant served her First Request for Production to Plaintiff on August 29, 2012.

> 2.   Plaintiff has contended that its redacted portions of the morandum [sic] dated November 23, 2011, is work-product or attorney-client privileged, and that minutes of a trustees meeting on November 29, 2011 were redacted.

> 3.   Plaintiff has not properly complied with the law and case law as to these redacted portions, and Defendant will have to file a Motion and Brief to Compel Production. Defendant has been diligent in pursuing discovery from Plaintiff. However, Plaintiff's discovery responses were not received by Defendant until October 4, 2012. That discovery referred to a 9-27-12 metered letter from Mr. Hopp

---

Fralick that she might be eligible for Surviving Spouse Pension benefits do not support her estoppel defense. In addition to the reasons argued by the Fund, the court notes that both of these letters contained qualifying language that made clear that any determination regarding Patricia Fralick's claim for or entitlement to Surviving Spouse Pension benefits would be dependent on the outcome of *Fralick I.*

that was not posted until October 3, and not received by James M. Klancnik until Monday, October 8, 2012.

   4.  Document 15, the Amended Scheduling Order, currently provides a trial date of June 3, 2013, and a Dispositive Motions date of October 19, 2012. *Defendant plans on filing dispositive motions, but foresees that the referral to the Magistrate and subsequent submissions, joint statement of position and appendices, may easily consume two or three additional months until the attorney-client privilege and work-product claims are disposed of.*

   5.  *Therefore, Defendant requests that this Court enlarge the October 19, 2012 date [dispositive motion deadline] to December 19, 2012* and the other party will be in no way prejudiced by the change. The proposed December 19, 2012 date is more than 90 days before the trial date (more than 150 days, in fact). Cf. LR 56.2(a).

   6.  This motion is presented in good faith by the movant. *Of course, the extension will most probably have to result in all further dates being moved equivalently, including completion of discovery.*

Def.'s Br. 2 (Doc. 20) (emphasis added).

   The Fund opposes further extension of the dispositive motion deadline because this deadline was previously extended upon request of Patricia Fralick from August 17, 2012, to October 19, 2012. The Fund contends that Patricia Fralick delayed in serving discovery by waiting until August 29, 2012, before serving any discovery requests, and the memorandum at issue in Patricia Fralick's motion to compel was provided to her under cover of letter dated August 14, 2012, before the Fund was served with any discovery requests. The Fund therefore contends that Patricia Fralick's motion to compel is untimely, as it was filed after the discovery deadline and two months after the Fund produced the memorandum. The Fund contends that Patricia Fralick should not be allowed to use her own delays in further extending the dispositive motion deadline. The Fund further asserts that all information in the meeting minutes pertaining to the Fralicks has been produced. Pl.'s Br. 2, Exh. A. The Fund also maintains that Patricia Fralick will not be prejudiced by the denial of the requested

extension of the dispositive motion deadline because she has not explained how the discovery sought is relevant to her ERISA claim or how the merits of her ERISA claim or any dispositive motion filed by her would be impacted by the limited discovery sought. Even assuming that the attorney-client communication in the legal memorandum is relevant to her claim, the Fund contends that Patricia Fralick can easily make a supplemental filing to address the document at a later time.

Patricia Fralick's request that the court extend the dispositive motion deadline by two months would necessarily have required a modification of the court's scheduling order. Am. Scheduling Order (Doc. 15, ¶ 13) ("[A]ny request to extend the deadline for filing a motion, response, or reply for more than seven days involving a summary judgment, or requests used in combination that total more than one week, will result in a continuance of the trial date."). Likewise, Patricia Fralick's suggestion that the discovery deadline would also need to be extended by two months would require modification of the court's scheduling order because when she filed her motion for extension of time on October 10, 2012, the discovery deadline had already expired on October 5, 2012. *Id.* at ¶ 6.

Before the court can modify a scheduling order, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). In deciding whether to allow an amendment to the scheduling order, a court considers: (1) the explanation for the party's failure to meet the deadline; (2) the importance of the amendment to the scheduling order; (3) potential prejudice if the court allows the amendment; and (4) the

availability of a continuance to remedy such prejudice.  *Id*. (internal quotation marks, brackets, and citations omitted).

Patricia Fralick requested that the court extend the dispositive motion deadline by two months in light of her contemplated, but yet-to-be-filed, motion to compel unredacted versions of certain legal memoranda and meeting minutes; however, she fails to explain why such discovery was needed to support or respond to any dispositive motions filed by her or the Fund.  Moreover, the requested extension was mooted by the magistrate judge's November 1, 2012 denial of her motion to compel.  Specifically, the magistrate determined that Patricia Fralick's motion to compel was untimely and also failed on the merits.  Doc. 35.  Patricia Fralick did not object to or appeal the magistrate judge's denial of her motion to compel, and she has not identified any additional discovery needed to respond to the Fund's October 19, 2012 summary judgment motion; nor does it appear that any additional discovery was needed to support her motion to dismiss for lack of standing that was filed on October 31, 2012, after the dispositive motion deadline, as the basis for the motion to dismiss was a purely legal issue.

Additionally, the court finds unpersuasive Patricia Fralick's argument, made in support of her motion to compel, that she was unable to serve discovery requests until after the appeal process was completed and after she filed her amended answer and counterclaim in August 2012.  *See* Tr. Mot. to Compel (Doc. 37) at 4.  This action has been pending since December 2011, and, contrary to Patricia Fralick's contention, her claim for ERISA benefits is essentially the mirror image of the Fund's declaratory judgment action as to her request for ERISA benefits, and, for the reasons already explained, the court has determined that Patricia Fralick's standing argument, which she alluded to during the hearing on the motion to compel, fails as a matter of law.  Thus, there is no reason why

Patricia Fralick could not have commenced discovery sooner, and she has failed to show that the discovery deadline could not be met despite her diligence. Accordingly, good cause has not been shown for the requested extension, and the court need not address the four factors previously mentioned. The court will therefore deny Patricia Fralick's October 10, 2012 Opposed Motion to Enlarge Time.

### B.    November 5, 2012 Rule 56(d) Filing and Alternative 6(B) Filing

On November 5, 2012, Patricia Fralick filed her Rule 56(d) Filing and Alternative 6(B) Filing (Doc. 36), requesting the court to defer ruling on the Fund's summary judgment motion until her motion to dismiss for lack of standing and other "pending" motions or orders were resolved, including:

> Defendant's Motion to Compel (Doc. 21), Judge Solis's [sic] referral order (Doc. 22), Magistrate Ramirez's Orders regarding Motion to Compel (Docs. 23 and 35 ), . . . Defendant's Motion for Enlargement or Extension of Time (Doc. 20, filed October 12, 2012), Defendant's Reply to Plaintiff's Opposition to Enlarge Time (Doc. 32) and Defendant's Motion to Dismiss For Lack of Standing (Doc 33).

Def.'s Br. 1. Patricia Fralick contends that an extension under Rule 56(d) is justified because:

> Attached as Exhibit A to this motion is an affidavit that details how additional time will aid the Defendant in demonstrating bad faith, and goes beyond the "vague assertions" standard that the 5th Circuit operates under. Also, the resolution of the pending matters may also spare the Court from having to rule on Plaintiff's motion for summary judgement when it very likely has no standing to bring its claims against Mrs. Fralick in the first instance, as per Docs 20, 32, and 33 particularly, and is in the best interests of judicial economy, and also so that the ends of justice are secured and accomplished without the need for unnecessary and redundant filings.

*Id.* at 3 (internal citation omitted). Patricia Fralick asserts that Rule 56(d) motions "are especially relevant when on side has not had full opportunity to complete discovery" and are "usually invoked

when a party claims that it has had insufficient time for discovery or that relevant facts are in the exclusive control of the opposing party." *Id.* at 2 (citation omitted).

Alternatively, Patricia Fralick contends that the requested extension is warranted under Rule 6(b):

> Defendant's motions and filings would result in no prejudice to the Plaintiff and the December proposed date for disposition motion filings is still within the allowed time before trial under the current scheduling order and the Local Rules. Defendant is seeking the transcript of the hearing held on November 1, 2012. Also, Defendant has been in good faith throughout.

> Should the Court grant the extension requested in Defendant's motion to enlarge or extend time (Doc. 20, timely filed on October 12, 2012), Defendant's Rule 56(d) or 6(b) filing could be coextensive with the [two-month] enlargement of time [requested] in the prior motion.

*Id.* at 3-4.

The Fund counters that Patricia Fralick fails to provide any explanation as to why she could not file a response to the Fund's summary judgment motion by November 9, 2012, the response deadline. The Fund further contends that no additional discovery is necessary because the court's determination as to whether the Fund abused its discretion in denying Patricia Fralick's request for additional benefits beyond what was ordered by Chief Judge Fitzwater in *Fralick I* will necessarily be based on the limited factual administrative record. The Fund also notes that the magistrate judge, as did Chief Judge Fitzwater, denied Patricia Fralick's motion to compel attorney-client communications, and that the unsuccessful motion to compel does not justify the requested extension.

In her reply brief, Patricia Fralick asserts:

1. Defendant has not filed a motion for Rule 56(d) relief, but rather a 56(d) filing and 6(b) extension. *Cf. Cutting Underwater Techs. USA, Inc. v. Con-Dive,*

*L.L.C.*, no. 2:09-cv-387, 2011 WL 1103679, 2011 U.S. Dist. LEXIS 29325 (E.D. La. Mar. 22, 2011), *aff'd on other grounds sub nom. Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, no. 11-30380 (5th Cir. Feb. 14, 2012) (under the 2010 amendments to Fed. R. Civ. P. 56(c)(2) a party no longer has to file a motion to strike evidentiary material, but may simply object to the material).

       2.  Defendant is not untimely by virtue of her Motion to Dismiss rationale that the benefits issue in this case was not joined until after Defendant filed her counterclaim against Plaintiff for benefits, on August 21, 2012; Doc. 18.

       3.  Plaintiff's response does not address Defendant's previously filed motion to extend time (Doc. 20), dated October 10, 2012. The Court has not yet ruled on Defendant's motion. Also see Defendant's Reply Brief (Doc. 32), filed October 31, 2012, replying to Plaintiff's Opposition to Defendant's Enlargement of Time.

Def.'s Reply Br. 1-2.

The court addresses first Patricia Fralick's citation to *Cutting Underwater Technologies USA, Inc. v. Con-Dive, LLC*, No. 09-387, 2011 WL 1103679, at *3 (E.D. La. March 22, 2011), *aff'd*, 671 F.3d 512 (5th Cir. 2012), for the proposition that "under the 2010 amendments to Fed. R. Civ. P. 56(c)(2) a party no longer has to file a motion to strike evidentiary material, but may simply object to the material."  Def.'s Reply Br. 1.  Patricia Fralick correctly notes that the court in *Cutting Underwater Technologies* concluded that Rule 56(c) no longer requires a party to file a motion to strike an affidavit filed in support of a summary judgment motion; an objection is sufficient.  The court, however, fails to understand how this has any relevance to her motion for extension of time under Rules 56(d) and 6(b).  The court therefore considers whether she is entitled to the relief sought under Rule 56(d) or 6(b) as requested in her motion.

Rule 56(d) provides:

(d)    **When Facts Are Unavailable to the Nonmovant**.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d).  To obtain a continuance regarding a motion for summary judgment, the opposing party must file a motion, along with an affidavit or declaration, setting forth why the opposing party cannot present, by affidavit or declaration, evidence necessary to justify the party's opposition to the summary judgment motion.  *Id.*; *see also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999).  The party moving for the continuance must show why she needs the additional discovery and how the additional discovery will demonstrate that a genuine dispute of material fact exists.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 657-58 (5th Cir. 1996) (citation omitted).  A party may not "rely on vague assertions that additional discovery will produce needed, but unspecified facts."  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citation and quotation marks omitted).  Finally, the party requesting the additional discovery or extension must show that relevant discovery has been diligently pursued.  *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).  Rule 6(b) allows a district court to grant extensions of time prior to the expiration of a deadline for "good cause." Fed. R. Civ. P. 6(b). When a deadline has expired, Rule 6(b)(1)(B) allows a court to consider a motion for an extension of time for excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

In support of her Rule 56(d) motion, Patricia Fralick submitted the declaration of her attorney, David S. Jones ("Jones").  In his declaration, Mr. Jones requests an additional two months to respond to the Fund's summary judgment motion.  He also requests that the discovery deadlines and dispositive motion deadlines be extended as requested in the prior motion for extension.  While the dispositive motion deadline had not expired when Patricia Fralick first moved to extend that

deadline, the October 5, 2012 discovery deadline had expired, neither the Rule 56(d) motion nor Mr. Jones's declaration contains any reasons why Patricia Fralick was unable to respond to the Fund's summary judgment motion by November 9, 2012.   Instead, counsel merely incorporates the conclusory arguments set forth in the motion, acknowledges that the magistrate judge denied Patricia Fralick's prior motion to compel, notes that Patricia Fralick is ordering a transcript of the motion to compel hearing,[12] and also notes that Patricia Fralick's October 12, 2012 motion for extension of time is pending.   The motion and declaration do not specify what discovery is needed or how the additional discovery will demonstrate that a genuine dispute of material fact exists.   Patricia Fralick's has also not shown that the unspecified discovery was diligently pursued during the time allotted for discovery under the Amended Scheduling Order.

Moreover, the only discovery alluded to was the subject of Patricia Fralick's motion to compel, which she acknowledges was denied by the magistrate judge, and no appeal of that ruling was taken.   As herein noted, *Patricia Fralick also acknowledges in a recently filed motion to extend the trial and pretrial deadlines that no further discovery is needed*.   Thus, it is unclear to the court why Patricia Fralick did not respond to the Fund's summary judgment motion and file her own summary judgment motion by the deadline set forth in the Amended Scheduling Order.   For these reasons and the reasons discussed with regard to her prior motion for extension of time, Patricia Fralick is not entitled to a Rule 56(d) continuance; nor has she established good cause or excusable neglect required for relief under Rule 6(b).

---

[12] The transcript of the motion to compel hearing was docketed and available on November 16, 2012.

**Memorandum Opinion and Order – Page 34**

Additionally, given the court's determination regarding the Fund's interpretation of the Plan and its determination that Patricia Fralick is estopped from taking a position contrary to that taken in *Fralick I* as to whether Fred Fralick was retired or engaged in disqualifying employment, no additional amount of discovery would save or resurrect her claim. Patricia Fralick also asked the court to delay ruling on the Fund's summary judgment motion until it ruled on her motion to dismiss the Fund's declaratory judgment action, because she believed that if the Fund lacked standing and the motion to dismiss was granted, it would moot and be unnecessary for the court to decide the summary judgment motion. Patricia Fralick, however, fails to recognize that the Fund moved for summary judgment on its declaratory judgment action ***and*** Patricia Fralick's ERISA counterclaim. Accordingly, Patricia Fralick's motion to dismiss, even if granted, would not have mooted the Fund's summary judgment motion as to her counterclaim.

Further, Patricia Fralick made the strategic decision, based on her mistaken belief that her motion to dismiss for lack of standing under ERISA went to subject matter jurisdiction, to not respond to the Fund's summary judgment motion and not file her motion to dismiss until after the dispositive motion deadline, although the court had not yet ruled on her first motion for extension of the dispositive motion deadline. Patricia Fralick in essence attempted to grant herself an extension without first receiving permission from the court; however, absent an order on her motion to extend the dispositive motion deadline, she assumed the risk that the opposed extension would not be granted.

Finally, a court has the inherent right and authority to control its docket. *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997). The court sees no reason to further delay the proceedings, as Patricia Fralick's reasons for the requested extension of the

Memorandum Opinion and Order – Page 35

dispositive motion deadline are mooted by the court's ruling on her motion to dismiss and the magistrate judge's denial of her motion to compel.  Further, Patricia Fralick's second motion for extension filed on November 5, 2012, cites "pending" matters, including her motion to dismiss and motion to compel, but it fails to take into account that her motion to compel had already been denied, and her motion to dismiss did not preclude the court from ruling on all of the dispositive motions at the same time.  For these reasons and those previously stated, the court will deny Defendant's Opposed Motion to Enlarge Time and Defendant's Rule 56(d) Filing and Alternative 6(B) Filing. The matter is ripe for a decision, as Patricia Fralick's request for benefits was denied on December 5, 2010, and her five appeals and requests for reconsideration were denied before the Fund moved for summary judgment.

### C.   Patricia Fralick's Motion to Amend Scheduling Order to Extend Pretrial Deadlines and Trial Date

This is Patricia Fralick's second motion to amend the Scheduling Order.  Patricia Fralick seeks to amend the Scheduling Order to extend the pretrial deadlines and the trial of this case. Patricia Fralick maintains that there is good cause for the requested extension because she has not filed a dispositive motion or responded to the Fund's summary judgment motion "because she was waiting for rulings on the pending motions for extending time for her dispositive motion and responding to dispositive motion." Doc. 46, ¶ 9.  Patricia Fralick maintains that the claims in this case can be decided on motions for summary judgment without a trial, and that it is therefore important for the parties to fully brief the issues. *Id*. ¶ 10.  Patricia Fralick states that the Fund will not be prejudiced by her requested extension because she seeks no further discovery and the Fund

can be given an opportunity to file another summary judgment motion. *Id.* ¶¶ 12, 14. The Fund opposes the requested extension.

As previously noted, before the court can modify a scheduling order, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C.*, 315 F.3d at 536. The court determines that Patricia Fralick's explanation that she made the tactical decision to wait for the rulings on the pending motions, including her motion to dismiss and motions for extensions of the dispositive motion and discovery deadlines, before filing her own summary judgment motion or responding to the Fund's summary judgment motion is unavailing and does not establish that she, despite her diligence, could not meet the October 19, 2012 dispositive motion deadline and respond to the Fund's summary judgment motion. Moreover, although she indicated in her prior motions for extensions that additional discovery was needed, *she now acknowledges that no further discovery is needed and provides no explanation as to what has transpired to change her position in this regard since filing her last two motions for extensions of time*. For these reasons and the reasons discussed in ruling on Patricia Fralick's Opposed Motion to Enlarge Time and Rule 56(d) Filing and Alternative 6(B) Filing, the court will deny her Motion to Amend Existing Scheduling Order, Extend Certain Pretrial Deadlines, and Reset Current Trial Date.

## V.    Conclusion

For the reasons herein stated, the court concludes that it has subject matter jurisdiction over the Fund's declaratory judgment action, that no genuine dispute of material fact exists regarding Plaintiff's declaratory judgment action, and that the Fund is entitled to judgment as a matter of law on its declaratory judgment action and Patricia Fralick's counterclaim for pension benefits. The

court therefore **grants** Plaintiff's Motion for Summary Judgment (Doc. 25), **dismisses with prejudice** Defendant's counterclaim and request for Preretirement Surviving Spouse Pension benefits, and **declares** that: (1) Patricia Fralick is judicially estopped from asserting in this action that Fred Fralick engaged in disqualifying employment that affected his retirement status and entitlement to Single Life Pension benefits under the Plan, which is inconsistent with her position in *Fralick I*; (2) the Fund did not abuse its discretion in denying Patricia Fralick's claim for Surviving Spouse Pension benefits under the Plan; and (3) Patricia Fralick is entitled only to additional payment from the Fund in the amount of **$36,722**, representing the remaining 14 months payable under a Single Life Pension awarded to Fred Fralick, and that such payment will fully satisfy and discharge the Fund's obligations toward Fred Fralick and Patricia Fralick as a result of the employment or death of Fred Fralick.

The court awards Patricia Fralick no prejudgment interest on the $36,722 owed by the Fund. The decision to award prejudgment interest in an ERISA case is within the court's sound discretion. *See Firman v. Life Ins. Co. of North America*, 684 F.3d 533, 545 n.63 (5th Cir. 2012) (citation omitted). In this case, the Fund attempted to resolve the dispute in a timely manner after *Fralick I* by paying Patricia Fralick the remaining amount due under the Single Life Pension, but Patricia Fralick expressly refused the payment and returned the checks to the Fund's counsel. Therefore, any delay in such payment was not the fault of the Fund but instead was directly attributable to Patricia Fralick's conduct. A party should not be rewarded for dilatory conduct that thwarts a fair and equitable resolution of a dispute. The court can think of no congressional policy or principle of equity that is furthered by an award to a party who actively engages in conduct that prevents a just resolution to a legal dispute. *See id.*

**Memorandum Opinion and Order – Page 38**

The court **denies** Defendant's Opposed Motion to Enlarge Time (Doc. 20); **denies** Defendant's Motion to Dismiss for Lack of Standing (Doc. 33); **denies** Defendant's Rule 56(d) Filing and Alternative 6(B) Filing (Doc. 36); and **denies** Motion to Amend Existing Scheduling Order, Extend Certain Pretrial Deadlines, and Reset Current Trial Date (Doc. 46). The court, as required by Rule 58 of the Federal Rules of Civil Procedure, will issue judgment by separate document. The court will consider the Fund's request for attorney's fees postjudgment pursuant to Federal Rule of Civil Procedure 54(d)(2). Any application for attorney's fees must be supported by legal authority and other supporting documentation, as the court normally decides such requests based on written submissions without a hearing.

**It is so ordered** this 23rd day of April, 2013.

Sam A. Lindsay
United States District Judge